**Melvin ESTES–EL, Plaintiff,**

v.

**The STATE OF NEW YORK, The New York State Thruway Authority, The New York State Conservation Department, The Department of Correction, County of Westchester, Valhalla, New York and Their Servants and Agents: Somers Court Justice Judge Arthur R. Covy, Conservation Officer Stephen Cook, Shield Number 163; and State Police Officer Kenneth W. Caufield, Jr., Shield Number 3169—Troup K and Joe Panzarino, Somers Texaco, Defendants.**

No. 80 Civ. 4472(MEL).

United States District Court, S.D. New York.

Dec. 15, 1982.

As Corrected Dec. 29, 1982.

---

Emmanuel J. Lobato, North Tarrytown, N.Y., for plaintiff.

Robert Abrams, Atty. Gen., State of N.Y., New York City, for defendants Cook and Caufield; Howard L. Zwickel, Asst. Atty. Gen., New York City, of counsel.

LASKER, District Judge.

Plaintiff, Melvin Estes-El, was fishing in the Croton Reservoir in Westchester County, New York, on May 10, 1982 when he was arrested for fishing without a license. This complaint alleges that the defendants arrested him without probable cause, without authority, and with excessive force; kept him shackled to a wall without cause; failed to inform him of the charge against him; failed to give him the *Miranda* warnings; strip-searched him; argued for bail in an excessive amount; removed his vehicle and held it overnight without authorization; forcibly removed his headgear; and held him up to public ridicule, both in the stationhouse during the arrest and in the courtroom in subsequent court proceedings. Plaintiff alleges that these actions of Environmental Conservation Officer (ECO) Cook and State Police Officer (Police Officer) Caufield amount to deprivations, under col-

or of law, of rights secured by the United States Constitution in violation of 42 U.S.C. § 1983. Plaintiff also alleges that the officers conspired to deny him the equal protection of the laws, in violation of 42 U.S.C. § 1985, by continuing to prosecute him without cause because he is black. Plaintiff seeks $250,000 for the damages he has suffered.

Defendants deny many of plaintiff's allegations and invoke the good faith immunity of those government employees exercising discretionary functions. In addition, the defendants have filed counterclaims against plaintiff for malicious prosecution, intentional infliction of emotional distress, and injury to reputation. Plaintiff answered the counterclaims with a general denial and added counterclaims of his own for intentional infliction of emotional distress, injury to reputation, and malicious prosecution.

Defendants Cook and Caufield now move for summary judgment against plaintiff and for dismissal of plaintiff's counterclaims on the grounds that there is no genuine issue of material fact to be tried and that defendants are entitled to judgment as a matter of law. Defendants request that their counterclaims be preserved.

I.

Plaintiff's primary contention is that the defendants do not have authority under the Environmental Conservation Law (ECL) of the State of New York to arrest individuals for fishing without a license. Under N.Y. ECL § 11.0705 (McKinney 1973) failure of a licensee to have his license in his possession while fishing is presumptive evidence that he is taking fish without a license in violation of N.Y. ECL § 11.-0703(6)(e). N.Y. ECL § 71.0919(1)(a) provides that violations specified in N.Y. ECL § 71.0921 are misdemeanors; N.Y. ECL § 71.0919(1)(b) provides that all other violations are "infractions." The parties agree that fishing without a license is an "infraction" and not a "misdemeanor." The parties also agree that plaintiff was fishing without having his license in his possession on May 10, 1982. The disagreement be-

tween the parties concerns whether or not the ECL gives officers the power to arrest those committing infractions in their presence.

N.Y. ECL § 71.0525(1) specified that ECO's may arrest "without warrant any person committing in their presence a misdemeanor under this chapter...." Plaintiff characterizes this grant of power as an exclusive grant, by implication requiring a warrant before an arrest can be made for an infraction. Defendants, on the other hand, point out that N.Y. ECL § 71.0905(1) makes it clear that no provision of the ECL "shall be construed as amending, repealing, superseding, or limiting any provision of the Penal Law, Criminal Procedure Law or other law...." Defendants argue that N.Y. CPL § 1.20(34)(j) (McKinney 1981) gives to the ECO the status of a police officer. Police officers, pursuant to N.Y. CPL § 140.-10(1)(a), may arrest a person for "any offense when he has reasonable cause to believe that such person has committed such offense in his presence." N.Y. Penal Law § 10.00(1) defines an offense as "conduct for which a sentence to a term of imprisonment or to a fine is provided by any law of this state...." Since N.Y. ECL § 71.0923 permits fines for infractions, these sections can be read to confer upon ECOs the power to arrest, without warrant, anyone committing an infraction in their presence. This debate between the parties demonstrates an arguable ambiguity in the law of the State of New York.

The Supreme Court's recent decision in *Harrow v. Fitzgerald,* —— U.S. ——, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), makes it unnecessary to resolve the ambiguity, if any, at this time. In *Harrow,* which concerned a challenge to the Department of the Air Force's decision to discharge plaintiff, the Court held "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* 102 S.Ct. at 2738. The New York ECL does not "clearly establish" that ECOs are without the power to arrest those committing infractions in their presence without a warrant. The defendants could not know, indeed do not know, how the courts of New York will interpret their powers under the ECL of New York. The officers' belief that those actions were authorized is at least, in good faith, arguably valid. Under these circumstances, and following the holding in *Harrow,* defendants cannot, as a matter of law, be held liable for arresting plaintiff because this arrest was not clearly outside of the powers granted to them by the laws of the State of New York.

II.

Plaintiff's remaining claims seek damages under 42 U.S.C. § 1983 for alleged deprivations of rights, secured by the Constitution, during his arrest. These claims, in the order in which they will be discussed, are:

1) deprivation of the Sixth Amendment right to be informed of the charges against him;

2) deprivation of the Eighth Amendment right to be free from imposition of excessive bail;

3) deprivation of the Fifth Amendment right to be free from governmental seizure of private property without due process of law;

4) deprivation of the Fourth Amendment right to be free from unreasonable searches; and

5) deprivations of other rights secured by the due process clause of the Fourteenth Amendment. Specifically plaintiff alleges he was deprived of his liberty without due process when the officers:

a) failed to read him his *Miranda* rights.

b) handcuffed him too tightly, shackled him to a wall, and removed his headgear;

c) used excessive force in executing the arrest.

d) maliciously prosecuted him; and

e) slandered him in the stationhouse during his arrest and in the courthouse during subsequent procedures.

*Discussion*

■ 1) Plaintiff's claim that he was not informed of the charge against him fails on the uncontested facts. Plaintiff admits, (deposition of Melvin Estes-El at 4a–5a and 41a–46a) that he was given three or four papers at which he did not look. One of these was an appearance ticket describing the "alleged commission of the offense of fishing without a license." *Id.* at 41a. Plaintiff was, by his own admission, advised of the charge against him.

■ 2) Plaintiff's claim that his Eighth Amendment right to be free from the imposition of excessive bail was infringed fails as a matter of law. There is no showing that plaintiff's bail, set at $150, was excessive. More importantly, these defendants merely argued for bail, they did not set it. Police officers who arrest an individual cannot be liable for the bail required of that individual. *Basista v. Weir,* 225 F.Supp. 619 (D.C.Pa.1964), *aff'd in part, rev'd in part on other grounds,* 340 F.2d 74 (3d Cir.1965).

■ 3) Plaintiff's claim that the removal of his van and its storage overnight, constitutes a taking of property without due process in violation of his Fifth Amendment rights also fails as a matter of law. A governmental taking of property can violate due process only if the plaintiff can establish three elements: 1) a property interest, 2) a deprivation under color of law, and 3) lack of due process. *Parratt v. Taylor,* 451 U.S. 527, 536–37, 101 S.Ct. 1908, 1913–14, 68 L.Ed.2d 420, *Kohlasch v. New York State Thruway Authority,* 460 F.Supp. 956 (S.D.N.Y.1978). Assuming that the first two requirements have been met, plaintiff's claim must still fail as a matter of law because plaintiff cannot demonstrate that the remedies provided by New York State do not afford due process. Indeed New York procedures appear adequate. *Kohlasch, supra,* at 960 & n. 11. N.Y.Ct.Cl. Act § 9 (McKinney Supp.1977–1978) permits the state to be sued for common law torts, such as this trespass to property, as if the state was a private person. *Id.* at 961. Until plaintiff can demonstrate that he has availed himself of these procedures, and that they do not provide due process, he cannot prove his property was taken without due process. *Id.* at 961.

■ 4) Plaintiff's claim that he was subjected to an unreasonable search in violation of his Fourth Amendment rights cannot be disposed of on summary judgment. The uncontested facts demonstrate that plaintiff was subjected to a search which included visual inspection of plaintiff's groin area. *See* deposition of defendant Caufield at 23. This search took place in the "patrol room" of the state troopers' barracks in Somers. *Id.* at 19. This room has a three foot by four foot window in it which looks out onto the back parking lot. *Id.* at 22.

The factors determinative of the constitutionality of a search were set out by the Supreme Court in *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). The Court stated:

"In each case [the determination] requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted."

*Id.* at 559, 99 S.Ct. at 1884.

The uncontested facts noted above do not entitle defendants to judgment as a matter of law on the standard set out in *Bell.* Further, defendants admit there is a dispute concerning "the involvement of the defendants in certain of these actions." *See* Memorandum of Law in Support of Defendants Cook and Caufield's Motion for Summary Judgment at 46. Summary judgment is inappropriate when a genuine issue as to any material fact exists. The involvement of defendants in the search, specifically the extent of their involvement, is certainly a material fact. Summary judgment cannot be granted for defendants on plaintiff's claim that he was subjected to an unreasonable search in violation of his Fourth Amendment rights.

5) Plaintiff's remaining claims concern alleged violations of the Fourteenth Amendment's due process clause. Plaintiff first alleges that he was denied due process by the failure to read him his *Miranda* rights. Assuming that he was not read his rights, plaintiff's claim is still not cognizable under 42 U.S.C. § 1983. *O'Hagan v. Soto*, 523 F.Supp. 625 (S.D.N.Y.1981).

Plaintiff next alleges that he was handcuffed too tightly, shackled to a wall, and forced to remove his headgear. None of these actions, without a showing of further force or damage, rises to the level of a constitutional wrong. *Johnson v. Glick*, 481 F.2d 1028 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). As Judge Friendly has stated

"Certainly the constitutional protection is nowhere nearly so extensive as that afforded by the common law tort action for battery.... In determining whether the constitutional line has been crossed a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of the injury inflicted, and whether force was applied in a good faith effort ... or for the very purpose of causing harm."

*Id.* at 1033.

Estes-El admits that he was not physically injured during the events of May 10, 1980. (Deposition of Melvin Estes-El at 14a.) The action of the officers in handcuffing and shackling plaintiff, as well as in removing his headgear, which caused him no physical injury, does not rise to the level of a deprivation of the rights guaranteed by the due process clause of the Fourteenth Amendment under the *Johnson* standard.

Plaintiff also alleges he was denied due process when the ECO drew his revolver and ordered plaintiff to proceed to the bank of the reservoir. Plaintiff characterizes this as excessive force despite the fact that the gun was not fired, nor was plaintiff struck with the gun. (Deposition of Melvin Estes-El at 31.) These uncontested facts do not establish the use of excessive force. *Bates v. Westervelt*, 502 F.Supp. 94 (S.D.N.Y.1980).

Plaintiff next alleges that the officers maliciously prosecuted him thereby depriving him of due process. However, the charges against plaintiff were not dismissed on the merits, but rather, dismissed pursuant to N.Y. CPL 210.40 (McKinney 1981), in "the interests of justice." *See* the Order of Oxman, J. entered January 30, 1981 attached to the defendants' answer. The court stated its reasoning:

"This Court, upon its own motion, finds extenuating circumstances which clearly demonstrates that the interests of justice require dismissal of these charges. Specifically, the prosecution was transferred to this Court after five months of pendency in the Somers Justice Court, for jurisdictional defects beyond the control of defendant. The seriousness (or lack thereof) and circumstances of the offense lead this Court to exercise its judicial discretion by granting the relief herein set forth"

Plaintiff's allegation of a malicious prosecution fails as a matter of law because he cannot demonstrate that he was acquitted on the merits. *Singleton v. New York*, 632 F.2d 185 (2d Cir.1980).

Plaintiff's last claim alleging a conspiracy to deny him the due process of the law guaranteed by the Fourteenth Amendment in violation of 42 U.S.C. § 1983 concerns derogatory remarks made about plaintiff by these officers. Such allegations of slander do not rise to the level of a violation of due process. *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976).

III.

Plaintiff also claims a conspiracy to prosecute him maliciously because he is black in violation of 42 U.S.C. § 1985. This claim fails, as a matter of law, for the same reasons that plaintiff's allegation of a malicious prosecution under 42 U.S.C. § 1983 failed; that is, plaintiff cannot demonstrate

that he was vindicated on the merits in the state prosecution.

### IV.

In sum, defendant Caufield's motion for summary judgment is granted as to all allegations in the complaint except those dealing with defendant Caufield's search of plaintiff. Defendant Caufield's counter-claims are preserved.

Defendant Cook was not present during the search. (Cook deposition at 35–38.) Defendant Cook's motion for summary judgment is therefore granted. His counter-claims, however, are also preserved.

Plaintiff has agreed to withdraw his counterclaims and they are accordingly dismissed.

It is so ordered.