**Rodney TAYLOR, Plaintiff,**

v.

**Thomas MAYONE, Sheriff of Ulster County, Deputy John Doe and Sergeant John Doe, Defendants.**

**No. 78 Civ. 4062 (CHT).**

United States District Court, S.D. New York.

Nov. 10, 1983.

---

Louis B. Kimmelman, Susan J. Stabile, Evan A. Davis, New York City, for plaintiff.

Greenhill, Speyer & Thurm, New York City, for defendants; Mitchell Bloch, Charmaine Marlowe, New York City, of counsel.

OPINION

TENNEY, District Judge.

This is a civil rights action under 42 U.S.C. § 1983 (Supp. V 1981) in which plaintiff, Rodney Taylor ("Taylor"), alleges that three law enforcement officials in Ulster County, New York, violated his constitutional rights during, or in the events following, an incident in which a revolver was fired at plaintiff's vehicle. Taylor seeks declaratory and injunctive relief as well as compensatory and punitive damages.

All three defendants now move for summary judgment. Defendant Thomas Mayone ("Mayone"), Sheriff of Ulster County, argues that his actions are, as a matter of law, an insufficient basis for liability. The two other defendants, officers Donald Tinnie ("Tinnie") and David Hyatt ("Hyatt"), argue that they are entitled to qualified immunity as a matter of law. Defendants also assert that plaintiff's claim should be dismissed on the ground that he has failed to make out a claim that his constitutional rights have been violated. Finally, defendants argue, without contest by plaintiff, that the claims for injunctive and declaratory relief should also be dismissed.

For the reasons stated below, the motion for summary judgment is granted as to defendants Mayone and Tinnie. The motion is denied with respect to defendant Hyatt, and plaintiff will be given an opportunity to show at trial that Hyatt is liable to him in damages. Plaintiff's claims for injunctive and declaratory relief are, however, dismissed.

*Background*

On the wintry night of January 16, 1977, between the hours of 3:00 and 4:00 a.m., plaintiff Rodney Taylor was driving in his family's van between New Paltz and Rosendale. Taylor was at that time wanted under an arrest warrant on the charge of rape. A New Paltz police officer began following the van because it appeared to be swerving. When the van did not pull over, the officer gave chase and communicated with the radio dispatcher regarding the pursuit. Tinnie and Hyatt, deputies with the Ulster County Sheriff's Department, then received radio transmissions which indicated that a vehicle was under pursuit, and that the vehicle might contain Rodney Taylor. The Sheriff's Department had, within a few weeks prior, received a teletype concerning the warrant for Rodney Taylor's arrest. The content of the teletype is among the matters in dispute in this case. Hyatt has, however, testified that he was aware of the teletype at the time of the incident at issue, and believed it advised that caution be used in dealing with Taylor. Tinnie and Hyatt, who was driving, responded to the radio transmission regarding the chase by setting up a roadblock which was the scene of the shooting at issue in this case. The roadblock was set up on Elting Road, a curving, two-lane street in a rural stretch of Rosendale. The patrol car's unit lights, overhead lights, grill lights and spotlight were all turned on. By the time the Taylor van drew near, Hyatt had stepped outside the driver's side of the patrol car; Tinnie was near the passenger side of the car.

When Taylor's van was near the patrol car, Hyatt discharged his gun, leaving a bullet mark on the driver's side of the van. Hyatt states that he believed he was in imminent danger of physical injury from the van when he fired the shot. The position of the patrol car, how close the Taylor van came to the patrol car, in what direction Hyatt was aiming his revolver, and whether he reasonably believed he was in imminent physical danger, are among the matters disputed by the parties.

Pursuant to departmental policy, Sheriff Mayone instituted an investigation of the shooting incident. The investigation was carried out by a Lieutenant Detective, and, under the Sheriff's signature, a report was issued which concluded that "the shooting was justified and no action will be taken by this Department." Affidavit in Support of Motion for Summary Judgment of Thomas

Mayone, sworn to June 27, 1983 ("Mayone Aff."), Exh. A.[1]

*Discussion*

 In support of their motion for summary judgment, defendants argue that (1) Sheriff Mayone's actions are, as a matter of law, an insufficient basis for liability either under a *respondeat superior* theory or in their own right; (2) defendants Hyatt and Tinnie are entitled to qualified immunity as a matter of law; (3) plaintiff has failed to establish the existence or extent of an injury which is compensable under § 1983, and has failed to establish malice on the part of defendants; (4) declaratory relief is inappropriate since there is no substantial controversy between the parties of sufficient immediacy, and injunctive relief is unwarranted since there is no showing of irreparable injury or retaliatory actions.[2]

In opposition to defendants' motion, plaintiff argues that (1) plaintiff's claim against Sheriff Mayone is not based on a *respondeat superior* theory, but on allegations that Mayone himself violated plaintiff's constitutional rights by knowingly acquiescing in an unlawful shooting by preparing a report which was false and which covered up the violation of plaintiff's constitutional rights; (2) judgment based on qualified immunity is inappropriate here since there are disputed issues of material fact related to the circumstances of the shooting, the reasonableness of the deputies' actions, and their subjective good faith; (3) plaintiff has adduced sufficient evidence to withstand defendants' argument that his claims should be dismissed as a matter of law, and, since there are genuine issues of fact relating to these claims, they cannot be resolved by summary judgment.[3]

 A motion for summary judgment should be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Federal Rule of Civil Procedure 56(c). Although the burden is on the moving party to show that no genuine issue of fact exists, the non-moving party may not rest on mere conclusory allegations to show that an issue exists which should be resolved at trial. *See Harlee v. Hagen*, 538 F.Supp. 389, 393 (E.D.N.Y. 1982). By the same token, mere speculation as to the existence of such an issue is

---

**1.** It is undisputed that the regulations governing the conduct of Ulster County deputy sheriffs in January 1977 prohibited the use of deadly force in effecting an arrest or preventing an escape from custody unless it was necessary to defend against what the deputy sheriff reasonably believed to be the use or imminent use of deadly physical force. *See* Ulster County Sheriff's Department Rules and Regulations, § 5.002(a)(4), included in Affidavit in Opposition to Motion for Summary Judgment of Susan Stabile, sworn to on August 11, 1983, Exh. G. The regulations further provide that warning shots are prohibited, *id.* at § 5.002(d)(6), and that the discharge of firearms at a moving automobile is prohibited unless the occupant of the automobile represents a direct threat to the life or safety of the deputy or other innocent persons, and then only as a last resort. *Id.* at § 5.002(d)(4).

**2.** *See infra* note 3 regarding the disposition of plaintiff's request for equitable relief.

**3.** Plaintiff does not argue on this motion that declaratory or injunctive relief is an appropriate remedy. To show that an injunction is warranted, a party must demonstrate that there is a *significant threat that in the absence of this relief he will suffer irreparable harm or that* unconstitutional conduct will continue to be perpetrated by those he seeks to enjoin. *See* 11 C. Wright & A. Miller, Federal Practice and Procedure § 2948 at 431 & n. 23, 436, 440 & n. 39 (1973 & Supp.1983). Speculation is not enough. *CBS, Inc. (CBS Records Division) v. Tucker*, 412 F.Supp. 1222, 1230 (S.D.N.Y.1976). Plaintiff here makes no showing of irreparable harm or of ongoing police misconduct. Indeed, if anything, the evidence is to the contrary, since the departmental regulations appear designed to prevent the kind of misconduct alleged.

Plaintiff also makes no showing that he is entitled to declaratory relief. Such relief is granted only where "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality...." *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941); *see* 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2757 at 578–80 (2d ed. 1983). Since plaintiff does not now contest the propriety of defendants' argument on this issue, and since the Court finds that plaintiff has not made a showing that he may be entitled to either form of equitable remedy, the request for such relief as set forth in his complaint is dismissed as a matter of law.

insufficient to defeat a summary judgment motion. *See Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980).

■ The claim against Tinnie, as plaintiff's counsel conceded in oral argument, *see* Transcript of Hearing before this Court on October 12, 1983 ("Tr.") at 19, is insufficient to withstand this motion. Tinnie's involvement in the shooting was limited to his presence at the scene. Although he was at least a participant in the roadblock, the propriety of the roadblock is not an issue in this case. Thus, the claim against Tinnie is dismissed.

■ With respect to the claim against Corporal Hyatt, however, defendants have failed to show the absence of any issue of material fact. At least on the issue of qualified immunity—on the basis of which defendant Hyatt now seeks summary judgment—there are numerous issues of fact which remain in dispute. Among these are the weather conditions on the night of the shooting, the position of the roadblock on Elting Road, the path of the Taylor van, the direction in which Hyatt was aiming when he fired, and the content of the teletype message relayed to the Sheriff's Department some time prior to the incident at issue here. All of these go to the reasonableness of Hyatt's actions, an issue which must be resolved in determining whether Hyatt's conduct was such as to be protected by the affirmative defense of qualified immunity. *Harlow v. Fitzgerald*, 457 U.S. 800, 817–19, 102 S.Ct. 2727, 2738–39, 73 L.Ed.2d 396 (1982).

■ In establishing the latter defense, a defendant must show that his conduct did not violate constitutional or statutory rights which a reasonable person in his position, under the circumstances, would have known were rights of the plaintiff. *See Harlow, supra,* at 817–18, 102 S.Ct. at 2738–39; *see generally Capital Telephone Co. v. City of Schenectady*, 560 F.Supp. 207, 212 n. 11 (N.D.N.Y.1983); *Dale v. Bartels*, 552 F.Supp. 1253, 1266 & n. 1 (S.D.N.Y.1982). Thus, all of the above-mentioned fact issues are material to the determination of whether Hyatt is entitled to qualified immunity. Therefore, as to Corporal Hyatt, the motion for summary judgment is denied.

As to the third defendant, Sheriff Mayone, plaintiff alleges that he knowingly acquiesced in what was an unlawful shooting. The full extent of this contention is that Mayone, acting in bad faith, prepared a false report and failed to take action against Hyatt for violating plaintiff's constitutional rights. It is undisputed that Mayone neither encouraged nor authorized harassment of Taylor, and it is undisputed that he did not authorize a policy or custom that would lead to an infringement of Taylor's constitutional rights. Further, it is undisputed that Mayone did not have any knowledge of prior misconduct by Hyatt in his treatment of suspects. Plaintiff rests his claim on his contention that, in his report on the shooting incident, Mayone improperly applied or failed to apply department regulations, and improperly absolved Hyatt of misconduct.[4] These allegations amount to a claim that Mayone violated plaintiff's rights by failing to reprimand Hyatt, or by acquiescing *after-the-fact* in Hyatt's misconduct.[5] Since the facts perti-

---

**4.** Although the court of appeals, in its prior opinion in this case, *Taylor v. Mayone,* 626 F.2d 247 (2d Cir.1980), inferred from plaintiff's *pro se* complaint that the claim against Mayone was based "on the theory that the deputies, as Mayone's employees, were *giving effect to his policies and instructions,*" *id.* at 250 n. 2 (emphasis supplied), plaintiff now disavows any reliance on the latter theory. *See* Statement of Plaintiff Pursuant to Rule 3(g) with Respect to Defendants' Motion for Summary Judgment at 5.

Alternatively, plaintiff does not appear to allege that the filing of the allegedly inaccurate report constituted an altogether independent or unrelated violation of plaintiff's rights on the facts of this case. Rather, as discussed *infra,* plaintiff's claim appears to be that Mayone's conduct violated plaintiff's rights because it overlooked, or acquiesced in, conduct of the deputies which violated plaintiff's rights.

**5.** Although plaintiff alleges bad faith on the part of Sheriff Mayone, he has made no showing whatsoever in support of this contention. He relies instead on the conclusions which may be drawn from the mere fact that Mayone may not

nent to this allegation are not in dispute, Tr. at 25–28; Mayone Aff. at 2–4; Statement of Plaintiff Pursuant to Rule 3(g) with Respect to Defendants' Motion for Summary Judgment at 5–6, the Court may grant summary judgment if the movant is entitled to judgment as a matter of law.

■ A supervisor's inaction can, under certain circumstances, result in liability under § 1983. *See Doe v. New York City Department of Social Services,* 649 F.2d 134, 141 (2d Cir.1981), 709 F.2d 782 (2d Cir.1983), *cert. denied sub nom. Catholic Home Bureau v. Doe,* — U.S. —, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983); *Duchesne v. Sugarman,* 566 F.2d 817, 831–32 (2d Cir.1977); *Harlee v. Hagen, supra,* 538 F.Supp. at 397; *Smith v. Ambrogio,* 456 F.Supp. 1130, 1135–36 (D.Conn.1978); *cf. Owens v. Haas,* 601 F.2d 1242, 1246–47 (2d Cir.), *cert. denied sub nom. County of Nassau v. Owens,* 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979). Thus, acquiescence in certain activities may be actionable notwithstanding the fact that it can be cast as action or as inaction on the part of the supervisor. However, liability cannot be found where there is no causal relationship between the supervisor's inaction and the deprivation of the constitutional right. *See Doe v. New York City Department of Social Services, supra,* 649 F.2d at 141; *Smith v. Ambrogio, supra,* 456 F.Supp. at 1136; *cf. Owens v. Haas, supra,* 601 F.2d at 1246; *Duchesne v. Sugarman, supra,* 566 F.2d at 832 ("[w]here conduct of the supervisory authority is directly related to the denial of a constitutional right it is not to be distinguished, as a matter of causation, upon whether it was action or inaction").

In analyzing a supervisor's acquiescence as inaction, it is useful to apply the approach used in *Smith v. Ambrogio, supra.* There, then District Court Judge Newman set out a distinction between two types of inaction for which liability may be imposed on persons in supervisory positions. "The first," the court said, "is where action is

claimed to be required to remedy a specific situation, the continuation of which causes a deprivation of constitutional rights. The second is where action is claimed to be required to prevent the next in a series of previous episodes, indicating a pattern of deprivation of constitutional rights." 456 F.Supp. at 1136; *cf. Doe v. New York City Department of Social Services, supra,* 649 F.2d at 144. Neither circumstance is alleged here.

But, even assuming Mayone's conduct in this case should be construed as action rather than inaction, the act of filing a follow-up report which improperly absolved his deputy of misconduct could not *without more* be said to have caused the deprivation of rights which plaintiff now challenges—namely, the shooting incident which was the subject of that report. Since the misconduct alleged had, of course, occurred prior to the investigation, improprieties in the subsequent report do not suffice to show causation.

■ Plaintiff alleges that Mayone, in bad faith, knowingly acquiesced in misconduct by his deputies. To show causation in this case, plaintiff would have to show that any acquiescence by Mayone was communicated at some point prior to the incident itself, and that this acquiescence *in some way* contributed to the likelihood that the deprivation of plaintiff's rights would occur. Instead, plaintiff indicates no intention to make such a showing, but relies instead on the preparation of the report itself as the basis for his claim. Plaintiff's claim as against Mayone is, therefore, insufficient as a matter of law, and summary judgment as to the claim against him is for this reason granted.

Finally, the Court does not agree with defendants' argument that plaintiff's claims against Hyatt should be dismissed as a matter of law. Plaintiff will be given an opportunity to prove at trial that he is entitled to compensatory or punitive damages for such mental and emotional distress as he may have suffered. *See Smith v. Wade,* — U.S. —, 103 S.Ct. 1625,

---

have applied the regulations of the department properly. Tr. at 27–28. This unsubstantiated

allegation as to Mayone's state of mind cannot withstand this motion.

1640, 75 L.Ed.2d 632 (1983); *Carey v. Piphus,* 435 U.S. 247, 254–59, 264, 98 S.Ct. 1042, 1047–50, 1052, 55 L.Ed.2d 252 (1978). This case is distinguishable from *Santiago v. Yarde,* 487 F.Supp. 52 (S.D.N.Y.1980), where the court found that there was no genuine issue as to any material fact and granted summary judgment in all defendants' favor, *id.* at 54. In the instant case, the question whether the firing of the revolver by Hyatt resulted in a violation of plaintiff's constitutional rights, as well as the further question of Hyatt's entitlement to qualified immunity, are questions of material fact, and neither can be disposed of summarily. *See Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.), *cert. denied sub nom. Employee-Officer John v. Johnson,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973); *see also Shillingford v. Holmes,* 634 F.2d 263, 265 (5th Cir.1981); *cf. Bates v. Westervelt,* 502 F.Supp. 94, 96 (S.D.N.Y. 1980).[6]

Therefore, defendants' motion for summary judgment is granted as to defendants Tinnie and Mayone, and denied with respect to defendant Hyatt. Plaintiff's claims for injunctive and declaratory relief are dismissed.

So ordered.

---

6. Although plaintiff correctly points out that he is challenging the conduct of law enforcement officers toward him when he was not yet under arrest, and points out that the court in *Johnson* *v. Glick, supra,* was considering the treatment of prisoners, plaintiff fails to point to cases which reject the application of the *Johnson* analysis where the treatment of prisoners is not at issue.